# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PSB Industries, Inc.** | ) |
| | ) |
| v. | ) Civ. No. 08-349E |
| | ) |
| **Costanzo's Welding, Inc., d/b/a** | ) |
| **Cataract Steel Industries,** | ) |

## OPINION

### I. Introduction.

The Amended Complaint in this case alleges breach of contract, breach of implied warranty and breach of express warranty claims, all related to two heat exchangers designed and manufactured by Defendant Costanzo's Welding, Inc., d/b/a Cataract Steel Industries ("Cataract") for Plaintiff PSB industries ("PSB") to use in an air purification skid which PSB had sold to Air Liquide Process and Construction, Inc. ("Air Liquide") for use in its Lehi, Utah plant. Once installed, the equipment underperformed.

Pending before the Court are Defendant's "Motion to Exclude Testimony of Joe Bouchier" [ECF #31] and "Motion to Exclude Testimony of Mike Turney" [ECF #37]. Both motions are based upon the decision of the United States Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S. Ct. 2786 (1993) and Fed. R. Evid. 702

The parties briefed the relevant issues and on October 4, 2010, the Court held a hearing on the Motions. No witnesses were called to testify at the hearing; counsel simply presented their legal positions with respect to the Motion. For the reasons set forth below, Defendant's "Motion to Exclude Testimony of Joe Bouchier" [ECF #31] is granted and Defendant's "Motion to Exclude Testimony of Mike Turney" [ECF #37] is denied without prejudice.

## II. Joe Bouchier.

Joe Bouchier was hired by PSB "to give my opinion in your case concerning PSB versus Cataract" and to model Cataract's heat exchanger "units in an attempt to ascertain why the Cataract supplied units were not performing to specification." Bouchier Expert Report, pp. 1-2. In particular, PSB seeks to have Bouchier "testify as to the causes for underperformance in the two Cataract supplied units." PSB's Response to Motion to Exclude Testimony of Joe Bouchier ("PSB's Opposition Brief"), p. 6.

Bouchier stated in his expert report that it is his opinion that both of the heat exchanger units "were modestly undersized and more importantly, manufactured defectively." Bouchier Expert Report, p. 2. Bouchier further concluded:

> Based on my review of all the evidence, I express the following opinions within a reasonable degree of engineering certainty:
>
> 1. There are one or more manufacturing defects in E-61 and E-07 that cannot be definitively identified since destructive testing was not an option. That said, I am very confident that these manufacturing defects in one or more respects have resulted in sub-optimal heat transfer based on flow pattern that are not as designed; and
>
> 2. In the absence of swapping out the E-61 and E07 for replacement units that were larger and properly manufactured, installing a larger heating unit for E-61 and supplemental cooling unit on E-07 was the most commercially pragmatic solution.

Id. at p. 9.

### A. Legal Analysis.

As stated above, Defendant Cataract's motion to exclude Mr. Bouchier's testimony is based on the premise that it must be excluded pursuant to Fed.R.Evid. 702 and Daubert v. Merrill Dow Pharm. Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). In particular, Defendant argues: "(1) Mr. Bouchier is not qualified to render some of the opinions contained in his report; (2) Mr.

2

Bouchier's opinions are unreliable because they are merely *ipse dixt*, having no foundation in the scientific method; and, (3) Mr. Bouchier's opinions do not 'fit' the case at hand because they are irrelevant." "Memorandum of Law in Support of Motion to Exclude Testimony of Joe Bouchier ("Defendant's Supporting Brief"), p. 6.

To the contrary, Plaintiff PSB contends that "Bouchier's opinions are based on an overwhelming wealth of knowledge and experience, as well as familiarity with the subject matter. His opinions are based on sound engineering principles. Bouchier's opinions are reliable, based on a discernable methodology, and are expressed to a reasonable degree of engineering certainty." PSB's Opposition Brief, p. 2.

The admissibility of an expert's opinion is governed by Fed.R.Evid. 702, "Testimony by Experts," which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Rule 702 obligates judges to act as a gatekeeper to ensure that any scientific testimony or evidence admitted is relevant and reliable. See Daubert, 509 U.S. at 589. Moreover, a proper foundation for the expert's opinion is required. Elcock v. Kmart Corp., 233 F.3d 734, 756 n. 13 (3d Cir. 2000). As succinctly explained by Judge Fischer in Jackson v. City of Pittsburgh, Pa., 2010 WL 3222137 (W.D. Pa. Aug. 13, 2010):

> The United States Court of Appeals for the Third Circuit has held that "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir.2003) (citations omitted). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability

3

and fit from reaching the jury." Id. In this role, the district court is not the finder of fact but must focus on the methodology of the expert in order to "satisfy itself that 'good grounds' exist for the expert's opinion." United States v. Mitchell, 365 F.3d 215, 244 (3d Cir.2004) (citing Daubert, 509 U.S. at 590, 113 S. Ct. 2786, 125 L.Ed.2d 469). Thus, the district court should not conflate "its gatekeeping function with the fact-finders' function as the assessor of credibility." In re TMI Litigation, 193 F.3d 613, 713 (3d Cir.1999).

Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. As long as an expert's scientific testimony rests upon "good grounds, based on what is known," it should be tested by the adversary process-competing expert testimony and active cross-examination-rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies. In short, Daubert neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.

Mitchell, 365 F.3d at 244 (quoting Ruiz-Troche v. Pepsi Cola Bottling Co., 161 F.3d 77, 85 (1st Cir.1998) (citations omitted)); see also Kannankeril v. Terminix Intern., Inc., 128 F.3d 802, 809 (3d Cir.1997) ("The trial judge must be careful not to mistake credibility questions for admissibility questions."). The party asserting the admissibility of the proffered testimony has the burden to demonstrate by a preponderance of the evidence that the opinions are based on "good grounds." Kannankeril, 128 F.3d at 807.

Id. at *8-9 (footnote omitted).

### 1. Qualification.

The first requirement of Rule 702 - that the proposed witness be an expert - has been liberally construed by this Court. 'We have held that a broad range of knowledge, skills, and training qualify an expert as such,' and have 'eschewed imposing overly rigorous requirements of expertise'." U.S. v. Velasquez, 64 F.3d 844, 849 (3d Cir. 1995) (quoting In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 741 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1253 (1995)).

Cataract contends: "[w]hile Mr. Bouchier's qualifications, as set forth in his report, seemingly satisfy the standard with respect to education and experience to offer opinions concerning heat exchangers, Mr. Bouchier's efforts in this case show that he is not qualified because he did not examine the exchangers at issue in this case." Defendant's Supporting Brief, p. 6. We disagree. Based upon Mr. Bouchier's background, as set forth in his CV, we find that he is qualified to provide expert testimony as to the causes for underperformance in the two Cataract supplied units even in the absence of being able to examine the heat exchangers.

To the extent however, that PSB would attempt to have Mr. Bouchier testify as to his opinion that: "in the absence of swapping out the E-61 and E07 for replacement units that were larger and properly manufactured, installing a larger heating unit for E-61 and supplemental cooling unit on E-07 was the most commercially pragmatic solution," we find that he is not qualified to render said expert opinion and therefore, is precluded from so testifying at trial.

### 2. Reliability.

With respect to the second requirement of Rule 702, in Velasquez the Third Circuit court further explained:

> The second requirement of Rule 702-that the expert testify to scientific, technical or other specialized knowledge-is intended to ensure the reliability or trustworthiness of the expert's testimony.
>
> In *Daubert*, the Supreme Court held that a district court, when presented with a proffer of expert "scientific" testimony, must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," by considering all relevant factors that may bear on the reliability of the proffered evidence. [footnote follows] Scientific evidence is deemed sufficiently reliable if the expert has "good grounds" for his or her testimony, i.e., the expert's opinions are "based on the 'methods and procedures of science' rather than on

5

'subjective belief or unsupported speculation.' " We have cautioned, however, against applying the reliability requirement too strictly, explaining that "the reliability requirement must not be used as a tool by which the court excludes all questionably reliable evidence. The ultimate touchstone [of admissibility] is helpfulness to the trier of fact."

Id. at 849-850 (citations omitted). In the footnote contained within this paragraph, the Velasquez court further explained:

> Courts should consider the following suggested factors, in addition to any other applicable factors, in making a preliminary determination regarding the reliability of scientific testimony:
> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Id. (citation omitted).

Turning to Mr. Bouchier's report and assessing "whether the reasoning or methodology underlying the testimony is scientifically valid," we find that while Bouchier stated abstractly that he engaged in "analysis, calculation and modeling," he never articulated the reasoning or methodology underlying his testimony. Absent such information we cannot conclude that "the reasoning or methodology underlying the testimony is scientifically valid," as opposed to being mere "subjective belief or unsupported speculation." In so finding, we have taken into consideration Plaintiff's contention that Bouchier's ability to more definitely conclude what was the cause(s) of the underperformance was hampered by Cataract's failure to turn over the documents needed to make the determination. We find Cataract's explanation that they either turned over the documents to PSB at the time the equipment was delivered or otherwise do not have possession of the sought after documents to be satisfactory.

6

As such, Mr. Bouchier is precluded from testifying at trial that it is his expert opinion that the reason why Cataract's heat exchangers did not perform to specification was because they were modestly undersized and were manufactured defectively.[1]

**III. Mike Turney.**

Mike Turney is an employee of Air Liquide. By letter dated February 22, 2010, PSB employee Brian Meyer asked Ron Miller, an Air Liquide employee, a number of questions relevant to the air purification skid at issue in this case. By letter dated May 14, 2010, Mr. Turney, on behalf of Air Liquide, responded to these questions.

**A. Legal Analysis.**

In Cataract's Motion and "Memorandum of Law in Support of Motion to Exclude Testimony of Mike Turney ("Defendant's Supporting Brief"), it argues that Mr. Turney's testimony must be excluded pursuant to Fed. R. Evid. 702 and Daubert v. Merrill Dow Pharm. Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993), because Mr. Turney's May 14, 2010 letter is really an expert report and that as such, it is deficient because: (1) "the report is unsigned and contains no reference whatsoever as to whether any of the statements made therein are made within any degree of certainty;" (2) there is no evidence that [Mr. Turney] is qualified to render any such opinions about heat exchangers; (3) "[Mr. Turney] purports to offer opinions relative to the catalyst vessel, without specifying what knowledge, information and experience he has with the involvement of said vessels;" and (4) "Mr. Turney makes several conclusory statements in his report without any backup detail, data or analysis to support his opinions." Id. at pp. 5-6. See also Id. at p. 8 ("Mr. Turney's testimony should be excluded because it is inadmissible under one

---

[1] Given this conclusion it is not necessary to address the third requirement of Fed.R.Evid. 702, that there must be a valid connection between the expertise in question and the inquiry being made in the case.

or more of the gatekeeping requirements pursuant to Rule 702 and *Daubert* analysis. Specifically, (1) Mr. Turney is not qualified to render some of the opinions contained in his report; (2) Mr. Turney's opinions are unreliable because they are merely ipse dixt, having no foundation in the scientific method; and (3) Mr. Turney's opinions do not 'fit' the case at hand because they are irrelevant.").

Defendant Cataract also contends that Mr. Turney relies in his report on a December 10, 2009 memorandum from Heraeus, the manufacturer of the catalyst vessel that is also part of the purification skid PSB manufactured for Air Liquide, that this memorandum is being introduced for the truth of the matter asserted and therefore, is hearsay, and thus, the Heraeus memorandum also should be ruled inadmissible at trial. Motion, ¶¶ 11-12; Defendant's Supporting Brief, p. 3.

Finally, Defendant argues that the statements made by Brian Meyer of PSB in the February 22, 2010 letter also should be precluded from admission into evidence at trial "because of the numerous unsupported allegations contained in said letter and assumptions that Mr. Meyer made without proper factual support." Motion, ¶ 23.

At the hearing, Cataract argued that while Mr. Turney originally had been identified as a fact witness, Plaintiff's counsel subsequently informed Defendant's attorney that Mr. Turney would be a rebuttal expert witness. Cataract then argued that a rebuttal expert needs to submit an expert report unless Mr. Turney was not retained or paid by PSB. The Defendant further argued that whether it was required or not, there is an expert report authored by Mr. Turney, the May 14, 2010 letter. Defendant then argued that this report was deficient because: (1) Mr. Turney is not qualified to offer opinions regarding heat exchangers, at least not according to his CV, which indicates he is a chemical engineer and a process engineer and shows no heat exchanger experience; (2) Mr. Turney assumes facts to be true in the letter without providing any analysis,

data, etc. to support these facts and states opinions that go to the ultimate issues in the case without any data; and (3) in stating his opinions, Mr. Turney relies on a memorandum from Hereaus, the manufacturer of the catalyst vessel that is also part of the purification skid PSB manufactured for Air Liquide, which is being introduced for the truth of the matter asserted and therefore, is hearsay.

In its response, PSB contends that because Mr. Turney is a rebuttal expert who was neither retained nor specifically employed to provide expert testimony in the case, nor one whose duties as a party's employee regularly involve giving expert testimony, it was not required to under Fed.R.Civ.P. 26(a)(2)(b) to produce an expert report prepared and signed by Mr. Turney. Plaintiff's Response to Motion to Exclude Testimony of Mike Turney ("Plaintiff's Opposition Brief"), p. 8.

At the hearing, PSB again argued that because Mr. Turney was neither retained nor specially employed by PSB Industries to give expert testimony, it was not required under the Federal Rules of Civil Procedure to provide an export report by Mr. Turney. Moreover, PSB argued that it would be premature to determine whether Mr. Turney's testimony should be excluded because Mr. Turney is only being considered as a possible expert witness to be used to rebut the testimony of Defendant's expert, Professor Mollendorf.

Given counsel for Plaintiff's statements at the Daubert hearing that Plaintiff has not yet determined whether or not Mr. Turney will testify as a rebuttal expert witness and, if he does, what he will say, the Court finds that the motion to exclude Mr. Turney's testimony at trial is premature and will be denied as such. We further find it premature to determine whether Mr. Turney's letter qualifies as an expert report, and whether the Heraeus memorandum cited to in

the letter is hearsay and hence, inadmissible at trial. All of these issues can be raised again by Defendant at trial.

Finally, with respect to Cataract's contention that the statements made in PSB's February 22, 2010 letter to Air Liquide should not be admitted at trial "because of the numerous unsupported allegations contained in said letter and assumptions that Mr. Meyer made without proper factual support," because Cataract did not explain to the Court with any greater specificity which of Meyer's approximately twenty-three (23) "statements" were unsupported allegations and contained assumptions made without proper factual support, its motion to exclude the February 22, 2010 letter from use at trial is denied. Said denial is without prejudice to raise this contention again, with greater specificity, at trial.

**IV. Conclusion.**

Defendant's "Motion to Exclude Testimony of Joe Bouchier" is granted. Defendant's "Motion to Exclude Testimony of Mike Turney" is denied without prejudice.

June 30, 2011

_____
Maurice B. Cohill, Jr.
Senior District Court Judge